IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:15-CV-00142-D

**Christie M. Lee,**

                    Plaintiff,

v.

**Carolyn Colvin**, Acting Commissioner of
Social Security,

                    Defendant.

**Memorandum & Recommendation**

Plaintiff Christie M. Lee instituted this action on April 9, 2015, to challenge the denial of her application for social security income. Lee claims that Administrative Law Judge Lisa R. Hall erred in her determination by failing to to present a proper hypothetical question to the Vocational Examiner ("VE") at step five. She further contends that new and material evidence warrants remand of the case. Both Lee and Defendant Carolyn Colvin, the Acting Commissioner of Social Security, have filed motions seeking a judgment on the pleadings in their favor. D.E. 26, 30.

After reviewing the parties' arguments, the court has determined that ALJ Hall erred in her decision. The court cannot conclude that substantial evidence supports a finding that Lee's moderate limitations in concentration, persistence, and pace were sufficiently addressed in the residual functional capacity ("RFC") or in the hypothetical questions to the VE at step five. Further, although the new evidence Lee has submitted, alone, would not provide a basis to remand, the additional evidence should be considered on remand. Therefore the undersigned

magistrate judge recommends[1] that Lee's Motion for Judgment on the Pleadings be granted, that Colvin's Motion for Judgment on the Pleadings be denied, and that and that the matter be remanded to the Commissioner.

## I.    Background

On July 21, 2011, Lee protectively filed an application for supplemental security income on the basis of a disability that allegedly began on November 1, 2006. After her claim was denied at both the initial stage and upon reconsideration, Lee appeared before ALJ Hall for a hearing to determine whether she was entitled to benefits. After the hearing, ALJ Hall determined Lee was not entitled to benefits because she was not disabled. Tr. at 24–32.

ALJ Hall found that Lee had the following severe impairments: anxiety, depression, and a history of drug and alcohol addiction. *Id.* at 26. ALJ Hall also found that her impairments, alone or in combination, did not meet or equal a Listing impairment. *Id.* ALJ Hall determined that Lee had the RFC to perform a full range of work at all exertional levels with additional non-exertional limitations including: she can perform simple, routine, repetitive tasks; she cannot perform fast-paced or quota based work; she can occasionally interact with co-workers and supervisors; and she cannot maintain sustained interaction with the general public. *Id.* at 28. ALJ Hall also concluded that Lee was unable to perform any past relevant work but that, considering her age, education, work experience and RFC, there were other jobs that existed in the national economy that she was capable of performing. *Id.* at 31–32. These jobs included: housekeeping cleaner, merchandise marker, kitchen helper, and hand packager. *Id.* at 31. Thus, ALJ Hall found that Lee was not disabled. *Id.* at 32.

---

[1]  The court has referred this matter to the undersigned for entry of a Memorandum and Recommendation.  28 U.S.C. § 636(b).

After unsuccessfully seeking review by the Appeals Council, Lee commenced this action and filed a complaint pursuant to 42 U.S.C. § 405(g) on April 9, 2015. D.E. 5.

## II.     Analysis

### A.     Standard for Review of the Acting Commissioner's Final Decision

When a social security claimant appeals a final decision of the Commissioner, the district court's review is limited to the determination of whether, based on the entire administrative record, there is substantial evidence to support the Commissioner's findings. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence is defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). If the Commissioner's decision is supported by such evidence, it must be affirmed. *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996).

### B.     Standard for Evaluating Disability

In making a disability determination, the ALJ engages in a five-step evaluation process. 20 C.F.R. § 404.1520; *see Johnson v. Barnhart*, 434 F.3d 650 (4th Cir. 2005). The analysis requires the ALJ to consider the following enumerated factors sequentially. At step one, if the claimant is currently engaged in substantial gainful activity, the claim is denied. At step two, the claim is denied if the claimant does not have a severe impairment or combination of impairments significantly limiting him or her from performing basic work activities. At step three, the claimant's impairment is compared to those in the Listing of Impairments. *See* 20 C.F.R. Part 404, Subpart P, App. 1. If the impairment is listed in the Listing of Impairments or if it is equivalent to a listed impairment, disability is conclusively presumed. However, if the claimant's impairment does not meet or equal a listed impairment, the ALJ assesses the claimant's RFC to

determine, at step four, whether he can perform his past work despite his impairments. If the claimant cannot perform past relevant work, the analysis moves on to step five: establishing whether the claimant, based on his age, work experience, and RFC can perform other substantial gainful work. The burden of proof is on the claimant for the first four steps of this inquiry, but shifts to the Commissioner at the fifth step. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

### C.    Medical evidence

Lee has a history of hospitalizations for suicide attempts and drug overdoses as well as self-cutting injuries which predate her amended onset date. Lee also has a history of depression and drug and alcohol dependence.

Since the alleged onset date, the medical evidence shows that in July 2011, Dr. Carol Martin, the treating psychiatrist, diagnosed Lee with attention deficit hyperactivity disorder, for which she prescribed Adderall. Tr. at 818–19. State agency examiner Dr. Earnest Akpaka performed a consultative psychological examination in November 2011. *Id.* at 811–15. Dr. Akpaka noted that Lee was tearful, moderately depressed, and that her recent and remote memory were fair. *Id.* at 812–13. Dr. Akpaka diagnosed Lee with major depressive disorder; anxiety disorder; and alcohol dependence, in full remission. *Id.* at 813. He opined that Lee was capable of understanding and responding to simple directions and performing simple, repetitive tasks and routines. *Id.* However, Dr. Akpaka also concluded that Lee's ability to perform tasks that require sustained concentration and persistence and to tolerate stress associated with everyday work activity was significantly limited by her mood symptoms and by her below average intellectual functioning. *Id.*

State agency consultants Drs. Jennifer Fulmer and Jessy Sadovnik performed reviews on November 18, 2011, and January 18, 2012, respectively. *Id.* at 30, 85, 101. Both reviewers

concluded that Lee could perform simple, routine, repetitive tasks in a stable, low-stress, low-production work environment. *Id.*

In January 2012, Lee reported to Dr. Martin that her employer terminated her due anxiety and concentration issues. *Id.* at 835. In July 2012, Lee reported to Dr. Martin that she was "doing ok" and Dr. Martin noted that she was stable on her current medication. *Id.* at 834. In November 2012, she related to Dr. Martin that she was having difficulty leaving the house by herself. *Id.* at 833.

### D.      Step Five

Lee contends that ALJ Hall erred at step five when she presented a hypothetical question to the VE that limited a claimant to simple, routine, repetitive tasks. She argues that this limitation fails to properly account for her moderate limitations in concentration, persistence, and pace. The Commissioner maintains ALJ Hall properly accounted for Lee's limitations in concentration, persistence, and pace. The court cannot conclude that ALJ Hall's step five inquiry complies with the ruling in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015), a decision issued after ALJ's Hall's determination.

In *Mascio*, the Fourth Circuit noted that an ALJ errs when the ALJ presents RFC findings to a vocational expert in the form of a hypothetical if the ALJ "failed to account for a relevant factor when determining [the plaintiff's RFC]." *Mascio*, 780 F.3d at 638. The Fourth Circuit "agree[d] with other circuits that an ALJ does not account for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work" because "the ability to perform simple tasks differs from the ability to stay on task." *Id.* (quotation omitted). In so holding, the Fourth Circuit emphasized the distinction between the ability to perform simple tasks and the ability to stay on task, stating that

"[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to explain why the plaintiff's "moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in [plaintiff's] residual functional capacity," the Fourth Circuit remanded the *Mascio* case. *Id.*

Here, ALJ Hall's RFC finding and hypothetical question noted that Lee is limited to performing simple, routine, repetitive tasks, not fast-paced or quota based work and that she can occasionally interact with supervisors and coworkers but is unable to maintain sustained interaction with the general public. Tr. at 26, 80. ALJ Hall also found that Lee's psychological symptoms improved with treatment and abstaining from alcohol, but that she still exhibited moderate limitations in socialization and concentration. *Id.* at 30. ALJ Hall stated that "[d]espite these limitations, the claimant is able to perform simple, routine, repetitive tasks. She cannot perform fast-paced or quota based work, due to decreased concentration and low stress tolerance." *Id.*

Although *Mascio* does not address whether such limitations account for moderate difficulties in this functional area, other courts have held that a limitation in production standards accounts for moderate difficulties in maintaining concentration, persistence, and pace. *See Russo v. Astrue*, 421 F. App'x 184, 192 (3d Cir. 2011) (holding that a hypothetical question that referenced an individual who "would not have a quota to fulfill" accounted for moderate difficulties in concentration, persistence, and pace); *Seamon v. Astrue*, 364 F. App'x 243, 248 (7th Cir. 2010) (holding that the ALJ captured claimant's moderate limitation in concentration, persistence, and pace when he included a restriction of "no high production goals"); *Rayman v. Comm'r.,* No. 14-3102, 2015 WL 6870053, at \*3 (D. Md. Nov. 6, 2015) (claimant's moderate limitations in concentration, persistence, and pace reflected in RFC that limited him to unskilled

work in a low stress environment, such that there are few changes in the work setting and no fast-paced or quota production standards, and only occasional contact with the public, supervisors, and co-workers and thus did not warrant remand under *Mascio*); *Gair v. Comm'r.,* No. 14-3652, 2015 WL 5774982, at *2 (D. Md. Sep. 28, 2015) (ALJ properly accounted for claimant's moderate limitations in concentration, persistence, and pace by limiting RFC to simple, routine, repetitive tasks in a low stress environment, defined as one with no strict production quotas, with only occasionally and superficially interactions); *Henig v. Colvin*, No. 13-1623, 2015 WL 5081619, at *12 (D. Md. Aug. 26, 2015) (rather than merely finding that plaintiff's moderate difficulties in concentration, persistence, or pace limited him to simple, routine, and unskilled work, the ALJ in his RFC assessment and hypothetical questions to the VE also accounted for plaintiff's inability to work in jobs not involving significant stress by excluding production-type line work, which accounts for moderate difficulties in maintaining concentration, persistence, or pace); *Belton v. Colvin*, No. 1:14-cv-777, 2015 WL 5023087, at *8 (M.D.N.C. Aug. 24, 2015) (simple, routine, and repetitive tasks, with avoidance of production work or similar fast-paced jobs with deadlines and quotas accounted for moderate limitation in concentration, persistence, and pace); *Linares v. Colvin*, No. 5:14–cv–120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) (distinguishing *Mascio* where ALJ limited claimant to simple, routine, repetitive tasks but also limited her to a stable work environment at nonproduction pace with only occasional public contact because the nonproduction pace addressed her limitations in pace and the stable work environment with only occasional public contact addressed her limitation in concentration and persistence).

However, other courts, including this court, have held that such limitations as contained in the RFC and in the hypothetical question to the VE fail to sufficiently address a claimant's

moderate limitations in concentration, persistence, and pace. *Desilets v. Colvin*, No. 2:14-cv-1693, 2015 WL 5691514, at *5 (D.S.C. Sep. 28, 2015) (remanding matter because RFC limiting claimant to "performing simple, repetitive tasks that are low stress and require no major decision-making or changes in the work setting" did not sufficiently address the claimant's moderate limitations in concentration, persistence, or pace); *Jones v. Colvin*, No. 4:14-cv-200, 2015 WL 4773542, at *6 (E.D.N.C. Aug. 13, 2015) (remanding matter where hypothetical question to the VE contemplating an individual limited to simple, routine, repetitive tasks; should work in a low production occupation, one which would require no complex decision making, constant change or dealing with crisis situations because such a limitation did not adequately address a moderate limitation in concentration, persistence, and pace); *Scruggs v. Colvin*, No. 3:14–cv–00466–MOC, 2015 WL 2250890, at *5 (W.D.N.C. May 13, 2015) (finding that an ability to perform simple, routine, repetitive tasks in a nonproduction environment, without more, does not account for claimant's moderate difficulties in concentration, persistence, and pace).

Lee points out that Dr. Akpaka remarked that she was "capable of understanding and responding to simple directions and performing simple repetitive tasks and routine[s]." Tr. at 813. Dr. Akpaka also concluded that Lee's "mental ability to perform tasks that require sustained concentration and persistence and tolerate the stress associated with day-to-day regular work activity is significantly limited by her mood symptoms and her estimated below average intellectual functioning." *Id.* ALJ Hall noted these findings and gave Dr. Akpaka's assessment great weight. *Id.* at 29.

Given the evidence and the lack of consensus among the district courts on this issue, the undersigned cannot conclude that the RFC and the hypothetical questions to the VE sufficiently

accounted for Lee's difficulties in maintaining concentration, persistence, and pace. ALJ Hall discussed Lee's psychological symptoms and found her moderate limitation in concentration was consistent with an RFC for simple, routine, repetitive tasks with no fast-paced or quota based work. *Id.* at 30. However, it is unclear what effect Lee's similar limitations in persistence and pace would have on her RFC determination. Although the ALJ's findings at step three may not require any additional limitations for concentration, persistence, or pace, ALJ Hall's decision fails to sufficiently explain how Lee's moderate limitations in concentration, persistence, and pace are reflected in the RFC and in the hypothetical questions so as to allow the court to conduct meaningful review. *See Scruggs*, 2015 WL 2250890, at *5; *Reinhardt v. Colvin*, No. 3:14–cv–00488–MOC, 2015 WL 1756480, at *3 (W.D.N.C. Apr. 17, 2015). Accordingly, remand for further consideration of Lee's limitations in maintaining concentration, persistence, and pace is appropriate. On remand, the ALJ should specifically state how the RFC determination reflects Lee's limitations in concentration, persistence, and pace or whether the ALJ finds that the moderate limitations in concentration, persistence, and pace had no impact on her ability to work.[2]

_____

[2] The Listing of Impairments 12.00 (Mental disorders–adult) addresses the functional area of "concentration, persistence, and pace" as follows:

> Concentration, persistence or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. Limitations in concentration, persistence, or pace are best observed in work settings, but may also be reflected by limitations in other settings. In addition, major limitations in this area can often be assessed through clinical examination or psychological testing. Wherever possible, however, a mental status examination or psychological test data should be supplemented by other available evidence.

> On mental status examinations, concentration is assessed by tasks such as having you subtract serial sevens or serial threes from 100. In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-

### E.     New and material evidence

Lee also argues that additional evidence from her psychiatrist, Dr. Martin, warrants further consideration. The Commissioner maintains that the additional evidence is not "new and material" so as to require remand. Instead, she submits, the letter from Dr. Martin merely serves to point out her disagreement with ALJ Hall's interpretation of evidence. The court finds that although the letter from Dr. Martin may not, without more, require remand for further

---

term memory or through tasks that must be completed within established time limits.

In work evaluations, concentration, persistence, or pace is assessed by testing your ability to sustain work using appropriate production standards, in either real or simulated work tasks (e.g., filing index cards, locating telephone numbers, or disassembling and reassembling objects). Strengths and weaknesses in areas of concentration and attention can be discussed in terms of your ability to work at a consistent pace for acceptable periods of time and until a task is completed, and your ability to repeat sequences of action to achieve a goal or an objective.

We must exercise great care in reaching conclusions about your ability or inability to complete tasks under the stresses of employment during a normal workday or work week based on a time-limited mental status examination or psychological testing by a clinician, or based on your ability to complete tasks in other settings that are less demanding, highly structured, or more supportive. We must assess your ability to complete tasks by evaluating all the evidence, with an emphasis on how independently, appropriately, and effectively you are able to complete tasks on a sustained basis.

We do not define "marked" by a specific number of tasks that you are unable to complete, but by the nature and overall degree of interference with function. You may be able to sustain attention and persist at simple tasks but may still have difficulty with complicated tasks.

Deficiencies that are apparent only in performing complex procedures or tasks would not satisfy the intent of this paragraph B criterion. However, if you can complete many simple tasks, we may nevertheless find that you have a marked limitation in concentration, persistence, or pace if you cannot complete these tasks without extra supervision or assistance, or in accordance with quality and accuracy standards, or at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions.

20 C.F.R. Part 404, Subpart P, App. 1. § 12.00(C)(3). This definition, however, offers little assistance in resolving the issue presented.

consideration, inasmuch as remand is warranted on other grounds, this evidence should be considered.

Sentence six of 42 U.S.C. § 405(g) permits remand when "there is new evidence which is material and ... there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). "Evidence is new ... if it is not duplicative or cumulative." *Wilkins v. Sec'y. Dep't Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991) (*en banc*). Any new evidence also must "relate[] to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *see, e.g., Smith v. Astrue*, No. 5:10–CV–219–FL, 2011 WL 3905509, at *2 (E.D.N.C. Sept. 2, 2011) (unpublished). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Wilkins*, 953 F.2d at 96. Where the new evidence creates a conflict with the existing evidence such that the new evidence must be weighed, remand is required so that the Commissioner can assess the evidence and resolve the conflict because "[a]ssessing the probative value of competing evidence is quintessentially the role of the fact finder." *Meyer v. Astrue*, 662 F.3d 700, 707 (4th Cir. 2011). However, remand is not required when the new evidence is so "one-sided" that review is still possible despite a lack of factual findings by the Appeals Council.

In response to ALJ Hall's decision, Dr. Martin issued a letter dated July 15, 2013. Tr. 12. In it, Dr. Martin addresses ALJ Hall's discussion of Lee's psychiatric records. Dr. Martin's letter states, in pertinent part:

> The initial goal of Ms. Lee's outpatient psychiatric treatment with me has been maintaining her "mental stability" without the frequent psychiatric hospitalizations she had been experiencing previously. Using this definition of mental stability as not being in a psychiatric ward, and not wanting to increase her stress level during this phase of her treatment, I have not yet encouraged her to seek slowly-progressive exposure therapy regarding panic-inducing situations in order to widen her scope of functioning.

*Id.* Lee contends that this letter serves to correct ALJ Hall's understanding of the term "stable" in Lee's treatment records.

In addressing Dr. Martin's treatment records, ALJ Hall noted that the medical evidence indicated that Lee's mental conditions and symptoms stabilized on medication. *Id.* at 29. She further noted that Lee consistently noted improved sleep, decreased anxiety, and mood stabilization. *Id.* ALJ Hall noted that "[b]y 2012, the claimant's medication management appointments were spaced further apart to once every two to three months" and stated that Lee "did not participate in individual or group counseling, only medication management appointment[s] with Dr. Martin." *Id.* ALJ Hall also remarked that Lee had not required hospitalization since her amended onset date since abstaining from drugs and alcohol. *Id.*

It is difficult to see how Dr. Martin's July 15, 2013 letter serves as a basis to correct an error in ALJ Hall's understanding or interpretation of the medical evidence. During the relevant time period, Lee visited Dr. Martin at Living Well Behavioral Health on seven occasions. *Id.* at 816–18, 832–35. These visits were largely, if not exclusively, for medication management. *Id.* Several treatment records from these visits note that Lee was stable on medications. *Id.* at 832–34.

More importantly, Dr. Martin's 2013 letter does not appear to detract from ALJ Hall's findings. Dr. Martin defined "mental stability" as not being in a psychiatric ward. *Id.* at 12. ALJ Hall noted that during the relevant time period, Lee had not been hospitalized since abstaining from drugs and alcohol. *Id.* at 29. This would suggest Lee's mental conditions stabilized under Dr. Martin's definition of "mental stability." Dr. Martin also opined that Lee would require a position with minimal interaction with coworkers and supervisors and no fast-paced or quota work. *Id.* at 12. This opinion parallels ALJ Hall's RFC finding that limited Lee to simple,

routine, repetitive tasks with no fast-paced or quota based work and only occasionally interactions with co-workers and supervisors. *Id.* at 28.

Consequently, while Dr. Martin's July 15, 2013 letter is not "new," because it offers a summary of Dr. Martin's treatment records already in evidence. It is also not "material" because the court is unable to conclude it that it would have changed the outcome of ALJ Hall's disability determination. Moreover, ALJ Hall's decision did not rely solely on finding Lee "mentally stable." Nonetheless, as this matter warrants further consideration of Lee's moderate limitations in concentration, persistence, and pace, the ALJ should consider Dr. Martin's letter upon remand.

## III.    Conclusion

For the forgoing reasons, the court recommends that Lee's Motion for Judgment on the Pleadings (D.E. 26) be granted, that Colvin's Motion for Judgment on the Pleadings (D.E. 30) be denied, and that the Commissioner's final decision be remanded for further consideration.

Furthermore, the court directs that the Clerk of Court serve a copy of this Memorandum and Recommendation on each of the parties or, if represented, their counsel.  Each party shall have until 14 days after service of the Memorandum and Recommendation on the party to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a *de novo* determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Owen v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

Dated: January 20 , 2016.

ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE